**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **NELSON AYALA, et al.,** | |
| *Plaintiffs,* | **CIVIL NO. 19-1150 (DRD)** |
| v. | |
| **KIA MOTOR CORPORATION,** | |
| *Defendants.* | |

**OPINION AND ORDER**

Pending before the Court is Defendant, Kia Motor Corporation's (hereinafter, "Kia" or "Defendant) *Motion to Strike Unauthorized Supplemental Expert Report and Sham Affidavits* (Docket No. 145)[1]. A *Response in Opposition*[2] (Docket No. 160) was filed by Plaintiffs.

For the reasons stated herein, the Court **GRANTS** the *Motion to Strike Unauthorized Supplemental Expert Report and Sham Affidavits* (Docket No. 145).

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the *Joint Initial Scheduling Memorandum*, Plaintiffs' final expert report had to be produced no later than February 28, 2020. *See* Docket No. 17. A written expert report was produced by Plaintiffs within the deadline. Upon request from Plaintiffs, the *Scheduling Order* was amended to allow Plaintiffs' expert, Peter Leiss (hereinafter, "Leiss") to produce a supplemental report by March 22, 2021. *See* Docket No. 34. Plaintiffs failed to timely produce the expert report within the deadline provided by the Court, and instead filed an untimely

---

[1] A *Memorandum of Law* in support thereof was also filed by Kia. *See* Docket No. 103.
[2] Although the title of the document is *Motion in Reply and to Strike Defendant's Answer and Petition for Summary Judgment* its content relates solely to the *Motion to Strike*.

request for extension of time that was initially denied by the Court, but ultimately granted by reconsideration in the best interest of justice but conditioned upon its production by no later than May 27, 2021. *See* Docket Nos. 50 and 55. As there was some discovery that had to be produced by the Defendant in order for Leiss to supplement his report, Plaintiffs requested an additional extension to produce the supplemental report. The Court granted a final extension until June 17, 2021, to produce the supplemental report. *See* Docket No. 63. The supplement would be limited in scope and due to Plaintiffs' delay in producing the supplement, they would have to make Leiss available for a supplemental deposition at their own cost. *See* Docket No. 62.

On the day of the deadline, Plaintiffs submitted a two-page supplemental report without reservation or limitation. As the supplemental report contained no new substantive opinions, and "to avoid unnecessary expenses and attempt to finally bring discovery to a close", the Defendant waived the right to take the supplemental deposition of the expert. Docket No. 145 at p. 2; *see also* Docket No. 90.

After the discovery cut-off date, to wit, October 8, 2021 (Docket No. 34), the Defendant timely[3] filed two (2) dispositive motions pursuant to the schedule approved by *Scheduling Order*, namely, (1) *Motion for Summary Judgment Due to Plaintiffs' Inability to Establish Basic Elements of Product Liability Claim with Admissible Evidence* (Docket Nos. 101-103); and (2) *Motion to Dismiss as a Sanction Due to Plaintiffs' Spoliation of Evidence* (Docket No. 104). After several requests for extension, *Responses in Opposition* to Motion to Dismiss and Motion for Summary Judgment were filed by Plaintiffs. *See* Docket Nos. 136, and 137-38, respectively. In support

---

[3] Pursuant to the amended Scheduling Order, dispositive motions were due by November 22, 2021. *See* Docket No. 34. Kia filed its dispositive motions on November 19, 2021.

thereof, Plaintiffs submitted as an exhibit a copy of Leiss' original expert report dated February 28, 2020, but with a new cover page titled "Declaration of Peter Leiss" [4] dated February 21, 2022, and signed by the expert under penalty of perjury. *See* Docket No. 137-1 at p. 1. Said document includes Leiss' opinions and conclusions of the instant case. Plaintiffs make extensive reference and even reproduce the expert report itself in their *Responses in Opposition. See* Docket Nos. 136-138.

In fact, Plaintiffs also make reference to another "Declaration of Peter Leiss" under penalty of perjury executed on January 20, 2022. Said declaration contains an additional opinion as to the front longitudinal rails of the 2016 Kia Rio vehicle subject of this case that modifies the original expert report in an untimely basis and without prior leave from Court. *See* Docket No. 126-5. As previously mentioned, discovery concluded on October 8, 2021. *See* Docket No. 34. Likewise, the final deadline to supplement the expert's report was June 17, 2021. *See* Docket No. 63.

Given this scenario, Defendant essentially argues that "the new 'sworn statements' contradict and/or are inconsistent with Leiss' prior sworn deposition testimony relied upon by Kia in in support of its dispositive motions. Plaintiffs do not even attempt to explain or justify the discrepancies and . . . fail to even cite a single actual passage of Leiss' deposition testimony in their opposition papers. Clearly, plaintiffs' intention is to create an illusion of controversy of

---

[4] For the reader's reference, the declaration reads as follows: "I, PETER J. LEISS, of legal age, automotive engineer and resident of Hershey, Pennsylvania, hereby declare pursuant to 28 U.S.C. § 1746 that, the Expert Witness Report (Attachment A) for the caption case dated February 28, 2020, was prepared by me and contained my opinions and conclusions in the case. Also, the Curriculum Vitae (Attachment B) and List of Cases in which I have participated (Attachment C) are accurate. Executed under the penalty of perjury pursuant to title 28 U.S.C. Section 1746 on this 20 th day of February 21, 2022."

genuine material facts." Docket No. 145 at p. 3. Therefore, the sworn statements should be disregarded pursuant to the "sham affidavit" doctrine.

In *Opposition*, Plaintiffs argue that "Peter Leiss (Leiss) is Plaintiffs' Expert as to product liability. [Kia] at length describes how Plaintiffs provided a sworn statement for his Reports. There is no actual controversy here. There is no doubt that an Expert can supplement his opinions and that Leiss's[sic.] opinions are in fact his own. Leiss is the person with first-hand knowledge of the contents of the report and how he prepared and reached the conclusions in said report. As author he can provide a form in the form of a sworn statement addressing that the contents of the report are true as far as he knows." Docket No. 160 at p.2. Likewise, Plaintiffs claim that "[i]t is well known that an expert witness can change his testimony or opinion depending on the issues and circumstances, and it will be up to the trier of facts to judge credibility. The fact that current statement contradicts a previous statement doesn't mean that they can be stricken, but it is up to the trier of fact to balance them and read them in context; a judge may grant more or less credibility depending on the circumstances." Id. at p. 3.

## II.    LEGAL ANALYSIS

Before adjudicating the Defendant's *Motion for Summary Judgment* (Docket No. 101) that is also pending, the Court must address this preliminary evidentiary issue. Plaintiffs rely *in extenso* on unsworn affidavits[5] (hereinafter, "Statements") dated January 21, 2022 (Docket No. 126-5) to support their *Response in Opposition* to *Motion to Dismiss* and *Motion for Summary Judgment*.

---

[5] One of the affidavits is a declaration by Plaintiffs' expert, Peter Leiss declaring that "pursuant to 28 U.S.C. § [], the Expert Witness Report (Attachment A) for the caption case dated February 28, 2020, was prepared by me and contained my opinions and conclusions in this case." (Docket No. 137-1 at p. 1). The other affidavit is a declaration from Leiss supplementing and clarifying several aspects of the February 28, 2020, Expert Witness Report (Docket No. 126-5 at p. 2).

*See* Docket Nos. 136 and 137-38, respectively. Defendant has moved to strike these unsworn statements on grounds that they constitute "sham affidavits" introduced to manufacture a dispute of material fact otherwise absent from the record. *See* Docket No. 145.

Whereas Defendant's *Motion to Dismiss as Sanction for Plaintiffs' Spoliation of Evidence* (Docket No. 104) and *Motion for Summary Judgment* (Docket Nos. 101-103)[6] rely heavily on Plaintiffs' expert deposition under oath from April 21, 2021. Numerous facts that Plaintiffs note in their opposition to both motions are exclusively supported by Peter Leiss' unsworn statements. Defendant maintains that the unsworn statements, signed between two (2) and three (3) months after the Defendant filed its dispositive motions, are a sham intended to create material issues of fact to defeat both the motion to dismiss and motion for summary judgment. In their response to motion to strike, Plaintiffs argue that,

> [i]t is well known that an expert witness can change his testimony or opinion depending on the issues and circumstances, and it will be up to the trier of facts to judge credibility. The fact that current statement contradicts a previous statement doesn't mean that they can be stricken, but it is up to the trier of fact to balance them and read them in context; a judge may grant more or less credibility depending on the circumstances.

Docket No. 160 at p. 3. According to Plaintiffs, "a simple reading clearly has Leiss stating that he had made a mistake in calculations and that he therefore had to change his analysis . . . The Doctrine itself permits changes to testimony, if they're not blatantly absurd and inconsistent with the previous statement, affiants, and witnesses." Id.

---

[6] Both motions were filed on November 19, 2021.

**1) <u>Sham Affidavit Doctrine</u>**

The Court begins by noting that an affidavit is equivalent to other forms of evidence, such as deposition testimony. *See* 10A Wright & Miller, *Federal Practice & Procedure* § 2727 (3d ed. 2011) ("facts asserted by the party opposing the [summary judgment] motion, if supported by affidavits or other evidentiary materials, are regarded as true.") The First Circuit has ruled that even arguably self-serving affidavits are to be considered when resolving motions for summary judgment. *See* <u>Cadle Co. v. Hayes</u>, 116 F.3d 957, 961 n.5 (1st Cir. 1997) ("A party's own affidavit, containing relevant information of which [they] ha[ve] first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment."). However, when a party "has given clear answers to unambiguous questions, [they] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." <u>Escribano-Reyes v. Prof'l Hepa Certificate Corp.</u>, 817 F.3d 380, 387 (1st Cir. 2016) (citing <u>Colantuoni v. Alfred Calcagni & Sons, Inc.</u>, 44 F.3d 1, 4-5 (1st Cir. 1994)). District courts are not required to articulate each contradiction between the party's prior testimony and the later filed affidavit in order to reject the statement. *See* <u>Orta-Castro v. Merck, Sharp, & Dohme Química P.R., Inc.</u>, 447 F.3d 105, 110 (1st Cir. 2006) (affirming district court's decision to disregard later filed affidavit that contradicted prior deposition testimony). Moreover, the court may strike out such testimony when the party offering it provides no satisfactory explanation for the changed testimony. *See* <u>Torres v. E.I. Dupont De Nemours & Co.</u>, 219 F.3d 13, 20-21 (1st Cir. 2000) (citing <u>Colantuoni</u>, 44 F.3d at 4-5).

The Court considers the timing of the affidavit and the party's explanation for the discrepancies in determining whether the testimony constitutes an attempt to manufacture an

issue of fact aimed at escaping summary judgment. *See* <u>Orta-Castro</u>, 447 F.3d at 110. Specifically, an affidavit filed after opposing party moves for summary judgment suggests ill motive. *See* <u>Id.</u> (citing <u>Colantuoni</u>, 44 F.3d at 5; <u>Torres</u>, 219 F.3d at 20). Likewise, counsel that represents a party during a deposition is expected to address, during the deposition, any confusing questions or inaccurate impressions collected by the deponent. If such issues are not raised by counsel during the deposition, and are later relied upon by the non-moving party to try defeat summary judgment, courts are entitled to conclude that such misunderstanding is an inadequate explanation for the changed testimony. *See* <u>Orta-Castro</u>, 447 F.3d at 110-11. A party may nonetheless elaborate, explain or clarify "prior testimony elicited by opposing counsel on deposition." <u>Nelson v. City of Davis</u>, 571 F.3d 924, 928 (9th Cir. 2009). All in all, First Circuit doctrine is unequivocal in that a party <u>may not contradict</u> previously given <u>deposition testimony with a later filed affidavit</u>. *See* <u>Colantuoni</u>, 44 F.3d at 4-5; <u>Orta-Castro</u>, 447 F.3d at 110. (Emphasis ours).

### 2)   **Contradiction between Deposition Testimony and Statements**

The issue here is whether Plaintiffs expert's Statements, filed after both the deposition and the filing of the Defendant's dispositive motions, must be stricken because they contradict Plaintiffs expert's deposition testimony.

In its *Motion to Strike* (Docket No. 145), the Defendant claims that several assertions contained in the Statements directly contradict Leiss' deposition testimony. The assertions concern discrepancies as to the theory provided by the expert regarding the vehicle accident subject of this case. According to the Defendant, "the new "sworn statements" contradict and/or are inconsistent with Leiss' prior sworn deposition testimony relied upon by Kia in support of its

dispositive motions. Plaintiffs do not even attempt to explain or justify the discrepancies and, as discussed *infra*, fail to even cite a single actual passage of Leiss' deposition testimony in their opposition papers. Clearly, plaintiffs' intention is to create an illusion of controversy of genuine material facts." Docket No. 145 at p. 3.

First, the Defendant argues that in the first paragraph of the *Oppositions* to motion to dismiss and motion for summary judgment Plaintiffs allege that the vehicle accident subject of this case was a "low survivable crash, the collision resulted in a delta V of about 24 MPH." In support thereof, Plaintiffs cite the "Sworn Expert Report" (Docket No. 137-1). In the Deposition, however, Leiss recognized that he made a mistake in the report and corrected the Delta V speed, establishing that both the impact speed and Delta V were in excess of 34 mph and that the accident with a Delta V of 34 to 39 mph was a "moderate to severe crash," not a "low survivable crash" as claimed by Plaintiffs. *See Peter Leiss' Deposition*, Docket No. 126-3 at pp. 162-63.[7]

---

[7] Q. In the Han against Ford case that we talked about a little bit earlier, you testified that a delta-V of 24 to 39 miles per hour was a moderate to a severe crash. Do you still hold your opinion?
A. Yeah, I think so.
Q. In this crash you say the delta-V was 24 miles an hour or 10 miles below what you've described as a moderate.
A. Actually, I have to correct myself there. I transposed the EBS and delta-V from the PC-Crash output. The delta-V from PC-Crash output is actually 34, which you probably noticed in the copy that you have from my earlier file. It's 34.12.
Q. Is the delta-V in this crash?
A. Yes.
Q. According to PC-Crash?
A. Yes. I inadvertently put the EBS or equivalent barrier speed, which PC-Crash calculated at 23, in my report and labeled it delta-V. So the delta-V according to PC-Crash, is 34.12.
Q. I'm going to hold onto that document for a minutes[sic.].
A. Well, sure.
Q. So your delta-V you now say is 34 miles an hour in this crash?
A. Yes.
Q. What was the impact speed?
A. Still --- it was just over 34.
Q. So the impact speed and the delta-V are virtually the same?
A. Yes, because the cars come --- basically all lateral --- or all longitudinal motion was arrested, and it comes out at a 93 angle from the impact. So it rebounds off and rotates.

Therefore, the deposition transcript shows unambiguously that Plaintiffs' expert corrected the mistake in the report and increased the impact speed and Delta-V from 24 mph to an excess of 34 mph making the crash subject of this case a "moderate to severe crash." For the Court to entertain the impact speed change, Plaintiffs would have to explain why they relied on incorrect information contained on an expert report that was sworn approximately ten (10) months after the expert's deposition under oath where he clarified this information. Basically, Plaintiffs disregarded the correction made by Leiss and proceeded to request a declaration from the expert without considering the inconsistencies therein.

Secondly, Defendant argues that in his expert report and in his deposition, Leiss "clearly opined and testified under oath that the longitudinal passenger side frame rail of the subject Kia Rio vehicle was not engaged in the automobile collision with the stationary cement pole, repeatedly testifying that said component received 'no or little damage' in the crash." *See* id., pp. 119-120, 130-31, 164-65, 154-161, and 120-23.[8] In an attempt to qualify or change the expert's

---

[8] **1) The cement pole intrusion into the passenger side affected numerous front-end components of the vehicle:**
Q. In your inspection did you find all the components that you just listed present for you to inspect? By all the components I'm talking about the ones that you just listed from the first impact with the pole to the point of disengagement.
A. I believe I did, yes.
Q. What other relevant front structure components did you identify during your inspection?
A. I don't understand your question.
Q. Did you identify the side rails?
A. Yes.
Q. Were they still attached to the vehicle?
A. The side rails were, yes.
Q. The passenger-side side rail, the front side rail, was it attached to the A-pillar?
A. I'd have to look at the photos.
Q. Do you know whether it had been displaced at all?
A. Again, I would have to look at the photos.
Q. Please do. (WHEREUPON, WITNESS REVIEWS PHOTOGRAPHS.)
THE WITNESS: I'm sorry. I don't believe it's attached to the car.
Q. Did you find any photographs of the front passenger side?
A. No.
Q. Had you ever seen any photographs that showed the condition of the passenger side rail?

_____

A. No

**2) Leiss' under oath testimony as to the severity of the crash:**
Q. Struck area being on the outside of the --- in your opinion, on the outside of the right frame rail?
A. Yes.
Q. At any point did the pole go inward of the A-pillar?
A. I'm sorry?
Q. Did the pole at any point in this crash go inward of the A-pillar on the passenger side?
A. Yes. …
Q. And would it have been on the outside of the frame rail.
 A. Yes.
Q. And did you notice any --- did you find any damage to the windshield header? By windshield header I mean the cross member between A-pillar on the right and A-pillar on the left?
A. I don't believe I did.
Q. And in your reconstruction you wouldn't expect to. Correct?
A. Well, there could be induced damage from the deformation to the A-pillar and the rocker kind of pulling that header down or even, you know, possibly inward as well or outward. So it is possible. Absolutely, it's possible that it was.
Q. Would you have expected any damage to the windshield header from contact with the pole inboard of the A-pillars?
A. Most likely not.
Q. And you didn't observe any?
A. I did not. …
Q. Is that as a result of the deformation from the pole pushing rearward along the outside of the frame rail?
A. Yes.
Q. Does the pole come to and, in fact, impact the A-pillar?
A. That I don't have an opinion on. The A-pillar is bent back upon itself. But is that induced or is it as a result of a direct strike, I don't know. ….
Q. Do you agree that an accurate measure of the stiffness values can be drawn from an analysis of the FMVSS208 crash test or the NCAP test?
A. Not for this collision, no, I do not agree.
Q. Why wouldn't it work for this conclusion?
A. Because the main longitudinal rails were not engaged, and that's the main driver of those stiffness coefficients from those full frontal barrier-type tests.

**3) Leiss' opinion that the side passenger rail suffered no or limited damage:**
Q. In page eight of your report you say, quote, there is little damage evidence of the passenger side longitudinal rail, end quote. What is that based upon?
A. Based upon that bent bumper beam bracket that is outside of that and also the broken suspension to the rocker area. So the force of the collision is pushing that wheel entire back into the rocker and not inward toward the longitudinal rail.
Q. How far from the front of the vehicle was there deformation as a result --- rear way, was there deformation as a result of this impact?
A. I don't have a measurement off hand.
Q. Well, was it back to the A-pillar.
A. Yes, the A-pillar was kinked rearward. …
Q. It was at least deformation to that depth. Is that a fair statement?
A. Yes. …
Q. Just backing up to where we were when we broke, I had asked you if you had found the passenger side rail and taken photographs of it, and you said no ---
A. Correct. (Emphasis ours).

opinion under oath, Plaintiffs also used the Statement to change Leiss' testimony about this matter, as follows:

> [m]y opinion regarding the passenger frame rail suffered no or limited damage as a result of longitudinal loading from the impact with the stationary cement pole is based on the physical evidence of the scene photographs and measurements and my observations from my inspection of the subject Kia. Had the evidence suggested the passenger side longitudinal rail was directly loaded rearward as it was designed to do would only alter my opinion as to the severity of the impact. All other opinions I have rendered regarding the design of the structure of the subject Kia would remain unchanged.

Docket No. 126-5 at p. 2. The Court finds that Leiss' Statement again directly conflicts with unequivocal deposition testimony. This is critical and determinative as the severity of the crash is one of the principal issues that was addressed when the accident was reconstructed and is fundamental as to any assessment of Plaintiffs' claim regarding crashworthiness. According to the Defendant the qualification or change in Leiss' opinion is fundamental as,

> [t]he severity of the crash as determined by the reconstruction of the accident, in turn affects Leiss' conclusion that the impact speed and Delta V in this particular crash was around 34 mph, whereas Kia's experts determined it was in excess of 45 mph. This is a major difference that directly affects any assessment as to whether or not the vehicle was crashworthy and performed reasonably under the particular circumstances surrounding the vehicle's collision with a stationary cement pole.

Docket No. 145 at p. 7. Therefore, it is reasonable to conclude that the severity of the crash provides all the basis of crashworthiness and establishes how the vehicle performed in a crash.

Third, the Defendant argues that Leiss' unsworn statements "address for the first time the report of Kia's expert witness Jeffrey Croteau. These new statements and opinions were not timely produced in compliance with [the] Court's Scheduling Order, as amended, and [are therefore] not admissible for consideration . . ." Docket No. 145 at p. 7. Upon reviewing the record, the Court finds that Leiss' expert report as submitted by Plaintiffs does not address Kia's

expert witness Jeffery Croteau's opinions at all. Attempting to produce new statements and opinions that were not produced during discovery in order to bypass summary judgment is discouraged in this district.

Finally, the unsworn Affidavits date of submission is also relevant to the Court's analysis. Plaintiff's expert witness unsworn Affidavits were executed on January 20, 2020 (unsworn statement under penalty of perjury, Docket No. 126-5) and February 21, 2022 (sworn expert report, Docket No. 137-1) namely, between two (2) and three (3) months after the filing of the motions to dismiss and summary judgment (Docket Nos. 101-104). In both Colantuoni, 44 F.3d at 5, and Torres v. E.I. Dupont de Nemours & Co., 219 F.3d 13, 20 (1st Cir. 2000), the First Circuit found such a chronology to be probative of the non-movant's attempt to create an issue of fact. Therefore, the Court finds the timing surrounding the unsworn Affidavits as suggestive that it was solely submitted by Plaintiffs with the aim of bypassing summary judgment. In light of (1) the unsworn Affidavits' timing; and (2) Plaintiffs' inadequate explanation for the qualification or change in the expert witness' opinions, the Court **GRANTS** the Defendant's *Motion to Strike* (Docket No. 145) in its entirety. Therefore, Leiss' unsworn statement under penalty of perjury (Docket No. 126-5) and Leiss' declaration attesting that the attached expert report dated February 28, 2020, was prepared by him, and contains his opinions and conclusions as to this case (Docket No. 137-1 at p. 1) are hereby stricken from the record.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2022.

*S/Daniel R. Dominguez*
Daniel R. Dominguez
United States District Judge

12