**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **NELSON AYALA, et al.,** | |
| *Plaintiffs,* | **CIVIL NO. 19-1150 (DRD)** |
| v. | |
| **KIA MOTOR CORPORATION,** | |
| *Defendants.* | |

**OPINION AND ORDER**

Pending before the Court is Defendant, Kia Motor Corporation's (hereinafter, "Kia" or "Defendant") *Motion for Summary Judgment due to Plaintiffs' Inability to Establish Basic Elements of Product Liability Claim with Admissible Evidence* (Docket No. 101)[1]. A *Memorandum of Law in Opposition to Kia's Motion for Summary Judgment* was filed by Plaintiffs. *See* Docket No. 138[2]. A *Reply* and *Surreply* were filed shortly thereafter by the Defendant and Plaintiffs, respectively. *See* Docket Nos. 146 and 158.

For the reasons stated herein, the Court **GRANTS** the *Motion for Summary Judgment due to Plaintiffs' Inability to Establish Basic Elements of Product Liability Claim with Admissible Evidence* (Docket No. 101).

**I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This is a product liability civil action related to the death of Joshua Méndez-García as a result of a car accident while traveling as a passenger in a 2016 Kia Rio vehicle, VIN No.

---

[1] A *Memorandum of Law* in support thereof was also filed by Kia. *See* Docket No. 103.
[2] An *Opposition to Defendant's Statement of Undisputed Facts* was also filed by Plaintiffs. *See* Docket No. 137.

KNADM4A36G6657184. *See Amended Complaint*, Docket No. 4 at 1. Pursuant to the *Amended Complaint*, on the early morning of February 17, 2018, as Plaintiff Nelson Ayala was driving his Kia Rio vehicle, on Sabana Seca Avenue, Levittown, in Bayamon, he lost control of the vehicle and hit a light post. *Comp.* ¶ 9. His brother, Joshua Mendez, was a passenger in the vehicle. *Comp.* ¶ 10. As a result of the accident, Joshua Mendez was stuck in the passenger's front seat and was not able to move or exit the vehicle. *Comp.* ¶ 10. Eventually the engine of the vehicle caught fire and Joshua Mendez perished calcinated inside the vehicle. *Comp.* ¶¶ 12, 16.

Plaintiffs essentially seek redress for the defective and unsafe design of the vehicle which allegedly caused the engine fire that led to Joshua Mendez's death.  *Comp.* ¶ 18. Additionally, decedent Joshua Mendez's mother, Co-Plaintiff, Jennifer Garcia, is claiming the pain and suffering endured by Joshua Mendez as a result of the accident. *Comp.* ¶ 24. Plaintiffs are also seeking redress for their own pain and suffering as a result of the incident. *Comp.* ¶¶ 25-26.

Kia moved to summarily dismiss the *Amended Complaint*. *See* Docket No. 101. The Defendant is essentially seeking "the dismissal of the captioned complaint on the grounds that plaintiffs have not – and cannot – prove with the required expert witness evidence that the subject 2016 Kio Rio motor vehicle had a design defect that caused or contributed to plaintiffs' claimed damages." Docket No. 103 at 1. According to Kia, "Plaintiffs have not proffered the basic required expert witness evidence to support their product liability claim. It is undisputed that the cause of the subject one vehicle traffic accident against a roadside stationary object was driver error." Id.

Plaintiffs in *Opposition* essentially argue that "a 16-year-old[3] died stuck and calcinated inside of a 2016 KIA Rio on a low-speed survivable crash, the collision resulted in a deltaV of about 24 MPH." Docket No. 138 at 1. Presumably, a design defect in the frontal structure of the vehicle resulted in a defective occupant survival space and accordingly, principles of consumer expectation were violated. Id. According to Plaintiffs, "[e]ven though safer alternate designs were feasible, [Kia] chose not to implement such systems on the 2016 KIA Rio." Id. A *Reply* and *Surreply* were filed shortly thereafter by the Defendant and Plaintiffs, respectively. *See* Docket Nos. 146 and 158.

As Plaintiffs effectively waived all arguments related to manufacturing defects and defective warnings, the Court needs not discuss these allegations, and instead will focus on the only remaining controversy, namely, defective design. *See* Docket No. 138 at 6.

## II.      SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *See* Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citing Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); *see also* Anderson v. Liberty Lobby, Inc., 477

---

[3] The Court notes that passenger Joshua Mendez was 21 years old at the time of the accident as supported by record citations. Plaintiffs consistently stating otherwise is misleading. *See* Deposition of Nelson Ayala, Docket No. 102-1 at p. 4, Docket No. 102-2 at p. 3 and Docket No. 168-1 at p. 7.

U.S. 242, 248-250 (1986); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Liberty Lobby, Inc., 477 U.S. at 255 (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660–661 (1st Cir. 2000) (citing Liberty Lobby, Inc., 477 U.S. at 247–248); Prescott, 538 F.3d at 40 (1st Cir. 2008) (citing Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing the advisory committee note to the 1963 Amendment to Fed. R. Civ. P. 56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. Shalala, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado–Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (emphasis ours). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.

1990); *see also* <u>Suarez v. Pueblo Int'l.</u>, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." <u>Liberty Lobby, Inc.</u>, 477 U.S. at 247–248. Similarly, <u>summary judgment is appropriate</u> where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and <u>unsupported speculation</u>." <u>Ayala–Gerena v. Bristol Myers–Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996); <u>Medina-Muñoz v. R.J.</u> <u>Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (emphasis ours).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." <u>Smith v. Jenkins</u>, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating <u>Shafmaster v. United States</u>, 707 F.3d 130, 135 (1st Cir. 2013)). The Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000); <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255; *see also* <u>Pina v. Children's Place</u>, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Reeves</u>, 530 U.S. at 150 (quoting <u>Anderson</u>, 477 U.S. at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact **and the movant is entitled to judgment as a matter of law.**" (Emphasis provided). *See* Fed. R. Civ. P. 56(a).

Hence, in order to prevail, Defendant must demonstrate that, even admitting well-pleaded allegations in light most favorable to Plaintiffs, the applicable law compels a judgment in its favor.

### III.      FACTUAL FINDINGS

The following factual findings are taken from the parties' statements of undisputed facts, and supported documentation. Upon careful review of the record, the Court finds the following facts are undisputed:

1.      On Saturday, February 17, 2018, at approximately 3:30 – 3:45 a.m., Plaintiff Nelson Ayala was driving his 2016 Kia Rio motor vehicle[4] accompanied by his younger brother and front seat passenger Joshua Mendez-Garcia. *See Comp.* ¶ 9; *see also* Deposition of Nelson Ayala, Docket No. 102-1 at pp. 2-4, 13-18.[5]

2.      Upon turning into the Sabana Seca Avenue[6] in Levittown, a minute and a half away from his house, Plaintiff, Nelson Ayala fell asleep at the wheel and crashed into a stationary cement utility pole located on the sidewalk. At that time his younger brother, Joshua Mendez-Garcia was

---

[4] According to plaintiff, Nelson Ayala, he purchased the used 2016 Kia Rio vehicle in September of 2017. He had obtained his driver's license three (3) months prior thereto. From the purchase of the vehicle until the date of the accident on February 17, 2018, plaintiff did not experience any problems with the subject motor vehicle, such as, problems with brakes, steering of the car and electrical problems. In fact, no warning lights came up on the instrument cluster prior to the accident subject of the case at bar. *See Deposition of Nelson Ayala*, Docket No. 102-1 at pp. 4-5, 67- and 11.

[5] Plaintiff Nelson Ayala had worked the "night shift" from 2:00 p.m. to 10:00 p.m. the day before the accident, namely, Thursday, September 15, 2018. He stayed home after work that night but slept four (4) hours. On Friday, February 16, 2018, he again worked the night shift. After work, he wen to the house, took a bath, changed clothes and went out with his younger brother and two (2) friends to a pub and later a discotheque consuming a couple of beers. *See* id., at pp. 12-18.

[6] The Sabana Seca Avenue is a three (3) lane highway in each direction [East to West] divided by a grass median. The road is flat and straight without any defects, such as potholes. On the night of the accident, the road was dry, visibility was clear and there was no traffic. *See* id., at pp. 21-22.

asleep in the front passenger seat of the Kia Rio motor vehicle. *See* Deposition of Nelson Ayala, Docket No. 102-1 at pp. 2, 18-20, 22-27.

3.      Plaintiff Nelson Ayala awoke after the collision and realized he had impacted the cement pole on the sidewalk with the frontal area of his Kia Rio vehicle, between the middle and right passenger side of the front of the car. *See* id. at pp. 24-27.

4.      As a result of the collision, the front seat passenger Joshua Mendez-Garcia was unable to exit the vehicle. *See Comp.* ¶ 10; *see also* Deposition of Nelson Ayala, Docket No. 102-1 at pp. 28-31.

5.      About forty-five (45) minutes after the collision with the off-road cement post, the Kia Rio vehicle ignited in the area of the engine compartment. It was a small fire, but it eventually spread engulfing the entire vehicle. *See Comp.* ¶ 12, 15-16; *see also Deposition of Nelson Ayala*, Docket No. 102-1 at pp. 32-35.

6.      Both the driver, Plaintiff Nelson Ayala, and the front seat passenger Joshua Méndez-Garcia survived the crash. Unfortunately, the front seat passenger Joshua Méndez-Garcia died calcinated as the result of the post-collision fire. Id. at p. 29.

7.      According to the Puerto Rico Police Department (hereinafter, "PRPD") Accident Report, Nelson Ayala "was driving his vehicle at a speed higher than the one permitted by law in the zone[7] causing due to said carelessness and negligence that he lose[sic.] control and command of the wheel leaving the roadway and impacting with the right front portion of his vehicle a cement

---

[7] Leiss declared under oath that both the impact speed and Delta V were in excess of 34 mph and that the accident with a Delta V of 34 to 39 mph was a "moderate to severe crash." *See Peter Leiss' Deposition*, Docket No. 126-3 at pp. 162-63.

post which was in the area of the sidewalk in the place previously mentioned." Docket Nos. 102-2 at p. 5 and 168-1 at p. 10.

8.      As to the PRPD Accident Report, "in this accident the driver sustained minor injuries, which were attended at the site by paramedics Camacho #01 and Rubio #07 of medical emergencies of Toa Baja and transported to the CDT of Cataño in stable condition." Id.

9.      Meanwhile, "the passenger young Joshua Mendez-Garcia was trapped inside the vehicle which was on fire dying completely burnt." Id.

10.     The PRPD Accident Report further reflects that the Police was notified of the accident at 4:55 a.m. and the Police arrived at the site of the accident at 5:15 a.m. Docket Nos. 102-2 at p. 3 and 168-1 at p. 9.

11.     Plaintiffs' *Amended Complaint* alleges as the sole cause of action that the subject 2016 Kia Rio motor vehicle "contained a defective and unsafe design and/or electrical malfunction that caused engine fire of the vehicle, therefore constituting a product unsafely dangerous for normal use due to its defective design and manufacture." *See* Docket No. 4, ¶ 18.

12.     In the *Amended Complaint*, Plaintiffs allege that Defendant was "responsible of one or more of the following careless and/or negligent acts and/or omissions:

a.      Failed to adequately and properly test and inspect the accessories incorporated into KIA RIO, 2016, VIN#KNADM4A36G6657184, so as to ascertain whether or not it was safe and proper for the purpose for which was designed, manufactured, and sold.

b.      Failed to utilize and/or implement a reasonably safe design in the manufacture, installation and/or functioning of the <u>electronic throttle</u> incorporated into the KIA RIO, 2016, VIN#KNADM4A36G6657184.

c.      Failed to install a <u>safe system</u> that would avoid an <u>engine fire</u>.

*See Comp.* ¶ 22 (emphasis ours).

13.     The only evidence Plaintiffs present in support of their allegations of product defect is the report prepared by their only announced expert witness Peter Leiss (hereinafter, "Leiss").

14.     All the documentation produced by Kia, including thousands of pages of engineering materials relating to the fuel system components of the subject vehicle, was reviewed by plaintiffs' expert Leiss during the course of discovery. However, Leiss testified that there was nothing he reviewed which would cause him to formulate a new opinion or alter the opinions contained in his original expert report. *See Deposition of Peter Leiss*, Docket No. 126-3 at pp. 194-96.

15.     Plaintiffs' expert witness has failed to address the post-collision fire; thus, Plaintiffs have not produced any expert opinion regarding an "electrical malfunction that caused the engine fire."

16.     Plaintiffs have not identified any alleged design defect that may have caused the engine fire [other than the natural consequence of the collision in which the subject Kia Rio vehicle was involved].

17.     Plaintiffs have not proffered any alternate economically feasible reasonable design of "a safe system that would avoid an engine fire" as pleaded in the *Amended Complaint*.

18.     Plaintiffs' expert witness admitted under oath that the 2016 Kia Rio motor vehicle complied with all safety standards regarding fuel safety. *See Deposition of Peter Leiss*, Docket No. 126-3 at pp. 168-69[8].

19.     Although not pleaded in the captioned *Amended Complaint*, Plaintiffs' expert rendered an opinion that the demise of the front seat passenger was caused by a purported generalized defect in the design of the frontal structures of all Kia Rio motor vehicles. In particular, Leiss argued that the cement pole intrusion into the passenger cabin of the 2016 Kia Rio which entrapped decedent was due to "the inadequate design of the longitudinal rails, cowl, a-pillar, floor pan, upper box members and rocker panel structures and/or lack of reinforcing members

---

[8] Q. What do you understand FMVSS standards to be?
A. Minimum set of performance requirements that vehicles have to demonstrate to be able to be sold in the United States.
Q. Do you agree that the robust standards are improved on mode of designs and save lives?
A. I do not agree that they are robust, but I do agree that they have improved vehicle standards and have saved lives.
Q. Aren't these the regulatory objectives for protecting occupants in the event of a collision?
A. Again, they're a huge set of performance requirements that you must demonstrate you meet or exceed in order to sell a vehicle in the United States.
Q. On page two of your report, when you talk about your qualifications you state while a fuel system engineer, I guided the design and testing of the entire fuel system from pillar neck to fuel rail interphase to meet or exceed corporate and governmental objectives for FMVSS. Is that correct?
A. Yes, it is.
Q. And you agree, at least insofar as fuel safety goes, an FMVSS 301 is an appropriate standard?
A. In terms of fuel safety, yes, I would agree. The newer, higher-speed offset test regimen, yes, I would Again, specifically looking at the fuel system safety aspect of it.
[ . . . ]

Q. Do you agree that the Kia Rio exceeded the FMVSS 208 safety requirements?
A. I do.
Q. Do you agree that the Kia Rio exceeded all applicable FMVSS standards?
A. Yes. Again, it had to. Otherwise, it would be illegal to sell the car in the United States.
Q. Well, I think you used the term earlier meet or exceed.
A. Yes.
Q. It exceeded each and every one, didn't it?
A. So your defect theory in this case is that a vehicle that had met and exceeded all federal safety standards is still defective. Correct?
A. Yes.

in these same areas Mendez Garcia's Kia failed to maintain the occupant survival space which is a violation of one of the principles of crashworthiness. The frontal structure and occupant survival space of the 2016 Kia Rio is defectively designed and unreasonably dangerous. This defective frontal structure and occupant survival space was a producing cause of Mendez Garcia's entrapment and ensuing death."

20.     However, Plaintiffs have not identified any particular design defect within the frontal structure, nor have they proffered any specific alternate, economically feasible design in relation to the subject 2016 Kia Rio motor vehicle other than to state in general terms that Kia has the "know-how and engineering practices" Kia used in redesigning the non-related Kia Soul model that plaintiffs allege could have been implemented on the subject Kia Rio model vehicle. Id. at pp. 178-79, 182-84.[9]

---

[9] Q. Have you proposed any alternative design in this case?
A. I have, yes.
Q. Is it in your report?
A. Yes.
Q. Where is it?
A. I mean, again, I don't have a --- you need to, you know, up-gauge this panel or make this panel thicker or add this, but you know, again, the safer alternative design would be to implement the know-how and engineering practices that they used on the Soul to this vehicle.
Q. Do you understand the Soul is a completely different vehicle, is it not.
A. Yes, it is.
Q. So it's got different design characteristics?
A. Sure. But that doesn't mean that the same things that they learned making that stronger would not apply to this vehicle. It's not like we're talking, you know, a unibody front-wheel drive car and a body-on-frame pickup truck or a big SUV. They're both uni-body transverse front engines. Sure, they're not the same chassis as --- or underbody or platform, but again, the --- and I didn't mean that you would literally take parts from the Soul and put them on the Rio. Again, looking at the design considerations, where they beefed up material, where they maybe put more welds in, where they put additional bracing, things like that, that could have been applied. More of the engineering design logic could have been applied to this.
Q. Is it your opinion that if this vehicle performed in an IIHS small offset test the same as a 2015 Kia Soul, that Mr. Garcia would not have been entrapped?
A. No. My opinion is that if this vehicle had been designed to have similar performance between --- good performance on the passenger and driver's side, that he would not have been entrapped.
Q. He would not be entrapped?
A. Correct.
Q. And your only claim in this case is a design claim. There's no manufacturing claim. Correct?

21.    Plaintiffs' only cause of action is a design claim, there is no manufacturing or failure to warn claim. Id. at p. 184.

22.    To support plaintiffs' theory of liability, plaintiffs' expert relies exclusively upon his analogy that the subject traffic accident was similar to a small overlap or offset crash test conducted by the Insurance Institute for Highway Safety (hereinafter, "IIHS"). See id. at p. 183-84.[10]

23.    Leiss recognized that the IIHS does not establish any federal regulated standards. See id. at pp. 173 and 177.[11]

---

A. Correct.

Q. And there's no warnings claim?

A. No, there is not. …

Q. Do you have an opinion to a reasonable degree of engineering certainty regarding what specific change would have had to have been made to the front structure of the Kia Rio not to be defective, in your opinion?

A. Insofar as, you know, strengthening this particular piece or adding, you know, a brace or something, no, I don't. And again, you know, comparing this to the Soul, Kia obviously knew what it took to do that. (Emphasis added).

[10] Q. And your only claim in this case is a design claim. There's no manufacturing claim. Correct?

A. Correct.

Q. And there's no warnings claim?

A. No, there is not.

Q. Do you have any basis to say that if this were not a 34-mile-an-hour delta-V accident but rather were a 45 or 50-mile-an hour delta-v accident, that Mr. Garcia would not have been trapped if he were in a Chevrolet Sonic, which you use as one of your examples?

A. Again, that was used as an example of a mid-cycle enhancement to the structural performance in this small offset test, but that's --- your hypothetical is not something that I have considered, so I have no --- opinion on that. (Emphasis ours).

[11] Q. Do you agree then that IIHS test results aren't used by NHTSA to define a defect or order a recall?

A. I do.

Q. And do you know whether IIHS, in reviewing the performance of tests over a number of years, be it the small overlap or the 40-percent overlap, that they found that the marginal and the acceptable oftentimes perform the same?

A. I have not seen that. Perform the same in what regards?

Q. Injury.

A. In a real-world collisions or ---?

Q. Yes, real-world collisions. No?

A. No, I've not. I'm aware of their --- looking at the good rated vehicles of how they perform better in the real world than their lower-rated vehicles.

Q. A marginal rating is not a failure, is it?

24.     Plaintiffs' expert also recognized that the IIHS test relied upon to form his opinion on liability did not exist for the passenger side at the time the 2016 Kia Rio was manufactured. *See* id. at pp. 7, 146, 173-74[12].

25.     The IIHS crash test is different from the actual, particular accident in the captioned case. *See* id. at pp. 160-61 and 166.

26.     The opinion of plaintiffs' expert was not based on any measurements or crush analysis, but rather on a computer program he input data by trial and error until he obtained the desired result. Id. at pp. 115-17, 148-150, 153-54, 162.

## IV.     LEGAL ANALYSIS

Kia Motor Corporation moves for summary judgment dismissing the *Amended Complaint*, essentially claiming that there is lack of evidence to establish causation between a design defect on the 2016 Kia Rio vehicle and the demise of Joshua Méndez-García. As this action is based on diversity jurisdiction, Puerto Rico law controls. Collazo-Santiago v. Toyota Motor, Corp., 149 F.3d 23, 25 (1st Cir. 1998). Additionally, the Defendant contends that Plaintiffs abandoned all claims related to the post-collision fire. Whereas allegations as to a design defect in the frontal structure

---

A. Well, again, this is IIHS. There's no real failure. You know, they test --- they test a vehicle and it gets ranked according to criteria for that specific test. There's no --- this isn't a FMVSS. There's no fail if you don't meet a certain HIC or a certain femur load. It's, you know, again non-regulatory.

[12] Q. And by the way, there has never been an IIHS small overlap to the passenger side of the --- this platform of Rios, has there?
A. No, there has not.
Q. That test came into existence in 2017. Didn't it?
A. That is correct.
Q. Which was after this vehicle platform had gone out of production?
A. Yes.

and occupant survival space of the 2016 Kia Rio were not part of the pleadings, and accordingly, must be dismissed.

**A.      *Negligence Under Article 1802 of the Puerto Rico Civil Code[13]***

Article 1802 provides that "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141. Under Article 1802, a plaintiff suing for personal injuries must plead, and ultimately prove, four elements: 1) a duty requiring the defendant to conform to a certain standard of conduct; 2) a breach of that duty; 3) proximate cause; and 4) damages.  Coyne v. Taber Partners I, 53 F.3d 454, 459-462 (1st Cir. 1995); Woods-Leber v. Hyatt Hotels of P.R., 124 F.3d 47, 50 (1st Cir. 1997). "These requirements cannot be satisfied unless the plaintiff proves that the injury was reasonably foreseeable, and, thus, could have been avoided had the defendant acted with due care." Woods-Leber, 124 F.3d at 50-51.  Therefore, to recover on a theory of negligence, Plaintiffs must show that the negligent acts or omissions of Kia Motor Corporation were the proximate cause of Joshua Mendez's injuries and eventual demise.  Malave-Felix v. Volvo Car Corp., 946 F.2d 967 (1st Cir. 1991)(stating that Puerto Rico defines legal cause as "proximate cause," and not actual or factual cause).

The duty of care "is anticipating reasonably probable injuries to probable victims."  Irvine v. Murad Skin Research Laboratories, Inc., 194 F.3d 313, 322 (1st Cir. 1999).  "A person breaches the duty of reasonable care when his actions create reasonably foreseeable risks. A plaintiff, then, must show the foreseeable risks created by defendant's acts or omissions in order to carry his

---

[13] As the instant case was filed prior to the enactment of the new Puerto Rico Civil Code, the 1930 Puerto Rico Civil Code applies.

burden as to the element of a tort claims." Vazquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007).  An actor is negligent if he fails to exercise due diligence to prevent a foreseeable injury. Malave-Felix, 946 F.2d at 972 ("a person is liable for injuries that a prudent person reasonably could anticipate."); *see* Rivera-Santiago v. United States, Civ. No. 08-1266, 2009 WL 702235, at *3 (D.P.R. Mar. 11, 2009)(holding that "negligence ensues if the injuries could be foreseen or reasonably anticipated by a reasonable and prudent person.").

The duty of care may therefore be defined as an obligation to anticipate and take measures against a danger that is reasonably foreseeable. The Supreme Court of Puerto Rico has on various occasions noted that "the requirement of foreseeability is not limited to requiring that the precise risk or consequences have been foreseen," explaining that "the essential [matter] is that there be a duty to foresee in a general way the consequences of a determinate class [of consequences]." Pabón–Escabí v. Axtmayer, 90 P.R. Dec. 20, 25 (1964) (emphasis added).

The element of "reasonableness" is implicit in this passage, for even though in order to be liable for negligence a person need not foresee the specific consequences that did, in fact, result from a given act or omission, still, those specific consequences must fall within the general class of consequences that in a normal person's experience flow from such an act or omission. Herminio M. Brau del Toro, 1 Daños y Perjuicios Extracontractuales [Torts] pp. 184–185 (1986). To sum up, "[t]he norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities."1 Daños y Perjuicios Extracontractuales [Torts] at 185.

**B.    *Product Liability***

The doctrine of strict liability by a manufacturer or seller for the damages caused by a defective of dangerous product applies in our jurisdiction. Aponte-Rivera v. Sears Roebuck de

P.R., Inc., 1998 WL 198857, 144 D.P.R. 830, 838, 1998 P.R.-Eng. 324486 (1998). There are three types of defects in products liability cases that warrant application of the strict liability doctrine; these are: manufacturing defects, design defects, and defects for failure to provide suitable instructions or warnings. Rivera-Santana et al. v. Superior Pkg., Inc., 132 P.R. Dec. 115 (1992).

Generally, "[a] manufacturer is strictly liable in tort when an article he places on the market, [] proves to have a defect that causes injury to a human being." Rivera-Santana, id. (cleaned up). Pursuant to Puerto Rico law, "in order to meet its *onus* under strict liability principles plaintiff has the burden of proving that the product was defective and that said defect was the cause of the injury. Perez v. Hyundai Motor Co., 440 F. Supp. 2d 57, 72 (D.P.R. 2006) (internal citations omitted). Namely, Plaintiffs "must show that the defective product was the legal cause of the injuries suffered." Aponte Rivera, 144 P.R. Dec. at 839. In the event that "concurrent causes are present the decisive or efficient one is that which, based on the circumstances, determines the damages." Perez, 440 F.Supp. 2d at 74.

"To establish strict liability under Puerto Rico law, a plaintiff must prove that (1) the product had a defect that made the product unsafe, and (2) the defect proximately caused the plaintiff's injury." Carballo-Rodriguez v. Clark Equip. Co., 147 F. Supp. 2d 66, 71 (D.P.R. 2001).

In sum, "[i]f the damage is not attributable to a defect of the product, there is no ground for applying the strict liability rule." Mendoza v. Cervecería Corona, 97 P.R. Dec. 499, 512 (1969). "Thus, under the strict liability rule governing cases of this kind in our legal system, the injured party need not prove the negligence of the manufacturer or the seller, but must prove that the product was defective." Rivera Santana, 132 P.R. Dec. 115. Nonetheless, "although the consumer

does not have to establish directly the manufacturer's negligence, <u>the manufacturer is not the insurer of every damage his products may cause</u>." <u>Mendoza</u>, 97 P.R. Dec. at 499 (emphasis ours).

The determinative issue in the Court's analysis is whether Nestor Ayala's accident and subsequent death of passenger Joshua Méndez were a result of a design defect which made the 2016 Kia Rio vehicle unreasonably dangerous and violated the principles of consumer expectation.

### 1) <u>Design defect and causation</u>

"Under Puerto Rican tort law governing design defect claims, if the plaintiff proves that 'the product's design is the proximate cause of the damage,' the burden shifts to the defendant to prove that 'the benefits of the design at issue outweigh the risk of danger inherent in such a design.'" <u>Quintana-Ruiz v. Hyundai Motor Corp.</u>, 303 F.3d 62, 69 (1st Cir. 2002) (citing <u>Aponte-Rivera</u>, 144 P.R. Dec. at 840). In sum, Plaintiffs have the burden of proving the existence of a defect and that said defect was the proximate or legal cause of the injuries suffered. <u>Aponte-Rivera</u>, 144 P.R. Dec. at 840. "To prove that the product was unreasonably dangerous, the evidence must show a relation of cause and effect." <u>Muniz-Nunez v. Am. Home Prod. Corp.</u>, 582 F. Supp. 459, 462 (D.P.R. 1984). Ultimately, "'[p]roof of causation is essential.' <u>Muñiz–Núñez v. American Home Products Corp.</u>, 582 F.Supp. 459, 461 (D.Puerto Rico 1984).

Thus, the Plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." <u>Prado Alvarez v. R.J. Reynolds Tobacco Co.</u>, 313 F. Supp. 2d 61, 76 (D.P.R. 2004), *aff'd sub nom.* <u>Prado Alvarez v. R.J. Reynolds Tobacco Co.</u>, 405 F.3d 36 (1st Cir. 2005). The element of "[p]roximate cause requires that the damages complained of be either

a direct result or a reasonably probable consequence of the act or omission at issue. Perez, 440 F. Supp. 2d at 73. In turn, adequate cause has been defined as,

> . . . that which, in light of general experience, ordinarily produces the damages suffered. In other words, that which in the ordinary and normal course of events would have resulted in the occurrence of plaintiffs' damages. That is if, in retrospect, the damages complained of seem the reasonable and ordinary consequence of the act or omission complained of.

Id. at pp. 73–74.

Finally, the First Circuit has validated the New Hampshire precedent that "[i]n crashworthiness cases involving indivisible injuries . . . the plaintiffs must prove that 'a design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision. Once the plaintiff[s] make[] that showing, the burden shifts to the defendant[] to show which injuries were attributable to the initial collision and to which defect.'" Trull v. Volkswagen of Am., Inc., 229 F.3d 343, 344 (1st Cir. 2000)(quoting Trull v. Volkswagen of America, Inc., 187 F.3d 88 (1st Cir. 1999). Therefore, Plaintiffs have the burden of proving causation between the design defect and the damage subject of this claim.

As previously stated, the Court is only concerned with an alleged design defect, as Plaintiffs waived defective warnings and manufacturing defects claims. *See* Docket No. 138 at p. 6.

## V.      DISCUSSION

In this case, the parties agree that Plaintiff, Nelson Ayala fell asleep at the wheel and crashed into a stationary cement utility pole located on the sidewalk. Fact. Find. ¶ 2. They also agree that both the driver, Plaintiff Nelson Ayala, and the front seat passenger Joshua Méndez

survived the crash with the cement pole. Id. at ¶ 6. However, about forty-five (45) minutes after the collision with the off-road cement post, the 2016 Kia Rio vehicle ignited in the area of the engine compartment. It was a small fire, but it eventually spread engulfing the entire vehicle. Id. at ¶ 5. As passenger Joshua Méndez was trapped inside the vehicle when the fire ensued, he eventually and unfortunately died completely burnt. Id. at ¶ 9.

**A.**     ***Post-Collision Fire***

Pursuant to the Puerto Rico strict liability standard, applicable to the case at bar, Plaintiffs have the burden of submitting sufficient evidence of causation for a trier of fact to conclude that passenger Joshua Méndez's death was due to Kia's defective or unsafe design of the 2016 Kia Rio that caused the engine fire subject of this case.

In order to establish the damages, Plaintiffs solely rely on the expert report of their only expert witness, Peter Leiss. However, "[e]xpert reports are inadmissible hearsay. Thus, because plaintiff[s'] [February 28, 2020] Expert Report is unsworn [pursuant to *Opinion and Order* at Docket No. 171], it is an inadmissible hearsay document that cannot be considered as part of the summary judgment record." Redondo Const., Co. v. Izquierdo, 929 F. Supp. 2d 14, 19 (D.P.R. 2013), *aff'd in part, vacated in part, remanded sub nom.* Redondo Const. Corp. v. Izquierdo, 746 F.3d 21 (1st Cir. 2014)(on other grounds); *see also* Pack v. Damon Corp., 434 F.3d 810, 815) (holding that expert report was "unsworn and thus is hearsay, which may not be considered on a motion for summary judgment"). "Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).

Therefore, Plaintiffs' claims are unsupported by record citations or evidence such as Leiss' testimony under oath by deposition. Not properly answering and/or opposing a summary

judgment request under Local Rule 56(c) is "at their own peril." *See* Local Rule 56(c) and (e); *see also* Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001).

In any event, the Court notes that there is no expert opinion as to an electrical malfunction that caused the engine fire of the 2016 Kia Rio. Rather, Plaintiffs focus solely is attempting to demonstrate that a defect in the frontal structure and occupant survival space of the vehicle caused Joshua Mendez to become trapped inside the vehicle, resulting in being unable to exit the vehicle and before the engine fire ensued. Therefore, it is uncontested that Plaintiffs have not identified a design defect that may have caused the engine fire, other than the natural consequence of the collision in which the subject Kia Rio vehicle was involved. Fact. Find. ¶ 17.

There are three (3) additional determinative factors that were also admitted by Plaintiffs, namely: (1) Plaintiffs' expert admitted under oath that the 2016 Kia Rio motor vehicle complied with all safety standards regarding fuel safety (Fact. Find. ¶ 19); (2) Plaintiffs have not produced any expert opinion regarding an electrical malfunction that caused the engine fire (Fact. Find. ¶ 16); and (3) Plaintiffs did not proffer any alternate economically feasible reasonable design of a safe system that would avoid an engine fire (Fact. Find. ¶ 18). In fact, Leiss went as far as to recognize that the 2016 Kia Rio exceeded all Federal Motor Vehicle Safety Standards (hereinafter, "FMVSS") safety standards and requirements including FMVSS 301, related to fuel safety.

Meanwhile, the Defendant argues that "[t]he traffic accident was [] caused by driver error and not as a result of any alleged defect in the 2016 Kia Rio vehicle." Docket No. 103 at p. 11. As such, the post collision fire is "a natural consequence of the severe collision against the cement pole." Docket No. 103 at p. 12. In support thereof, the Defendant submitted the PRPD Accident

Report which states that Nelson Ayala "was driving his vehicle at a speed higher than the one permitted by law in the zone causing due to said carelessness and negligence that he lose[sic.] control and command of the wheel leaving the roadway and impacting with the right front portion of his vehicle a cement post which was in the area of the sidewalk in the place previously mentioned." Fact. Find. ¶ 7. The Accident Report is consistent with Leiss' testimony under oath that both the impact speed and Delta V were in excess of 34 mph and that the accident with a Delta V of 34 to 39 mph was a "moderate to severe crash." *See Peter Leiss' Deposition*, Docket No. 126-3 at pp. 162-63.

Based on the foregoing, the Court finds that there is no evidence for a reasonable factfinder to conclude that a design defect of the vehicle proximately caused the engine fire that culminated with Joshua Mendez's life. The Court explains. Plaintiffs' expert cannot establish that there was a design defect in the 2016 Kia Rio vehicle that may have caused the engine fire that ended Joshua Mendez's life, other than the natural consequence of a collision with a cement pole in which the subject 2016 Kia Rio vehicle was involved. In fact, Leiss specifically testified under oath that the 2016 Kia Rio complied with all fuel safety standards. Accordingly, as Plaintiffs failed to demonstrate that a product design was the proximate cause of the engine fire that ensued in the 2016 Kia Rio vehicle, the Court finds that Plaintiffs' post-collision fire allegations were effectively abandoned and must be dismissed. *See* Fact. Find. ¶¶ 11-12.

**B.    *Design Defect – Frontal Structure and Occupant Survival Space***

Plaintiffs essentially claim that "[Kia's] failure to design and implement a strong frontal structure and occupant survival space that would have prevented injury in a foreseeable small offset frontal collision, as experienced by Mendez García's Kia, allowed an unreasonably

dangerous and defective product to enter the marketplace." Docket No. 138 at p. 35. In sum, "the occupant survival space intrusion was due to the inadequate design of the longitudinal rails, cowl, a-pillar, floor pan, upper engine box members, and rocker panel structures and/or a lack of reinforcing members of these same areas." Id. at p. 16.

By the same token, Plaintiffs argue that "it is possible and feasible . . . to improve the small overlap front crash performance on a vehicle without waiting for a complete redesign" as Kia chose to improve the performance of a Kia Soul[14] but not the Kia Rio.[15] Id. at p. 11. In support of their position, Plaintiffs make reference to the IIHS offset crash testing performance of automobiles as relied upon by Leiss in his opinions and conclusions. This test was performed to the driver's side of a 2013 Kia Rio, which according to Plaintiffs, "is the same generation of chassis as the 2016 Kia Rio." Docket No. 138 at p. 18. The results were the following,

> "[t]he 2016 Kia Rio received a marginal rating by the IIHS in their Small Offset Frontal Crash testing, including a marginal grade for the structural performance and a poor grade for the lower leg/foot; meaning there is a high likelihood of lower leg and injuries."

Id. at p. 18.

However, as to the IIHS testing, it is uncontested that: (1) Peter Leiss recognized that the IIHS does not establish any federal regulated standards; (2) the IIHS test relied upon by Plaintiffs' expert to form his opinion on liability did not exist for the passenger side at the time the 2016 Kia Rio was manufactured; and (3) the IIHS crash test is different from the actual, particular accident in the captioned case. Fact. Finds. ¶¶ 18-20.

---

[14] The Kia Soul is described as a Crossover Utility Vehicle ("CUV"). KIA, *2023 Kia Soul, Versatile Crossover*, (September 27, 2022, 3:21 PM), https://www.kia.com/us/en/soul.
[15] The Kia Rio is described as a subcompact sedan. KIA, *2023 Kia Rio, Subcompact Sedan*, (September 27, 2022, 3:24 PM), https://www.kia.com/us/en/rio.

In turn, the Defendant claims that "Plaintiffs did not raise any other allegation of product defect in the *Amended Complaint*, let alone plead any matter regarding the vehicle's front-end components, crashworthiness or occupant survival space." Docket No. 103 at p. 13. Although in the *Amended Complaint* Plaintiffs makes reference to the fact that Joshua Mendez "was stuck in the passenger's front seat and was not able to move or exit the vehicle," no allegations relating to a design defect in the vehicle's front-end components, crashworthiness or occupant survival space were made. *Amended Complaint*, ¶ 10.

As to the sufficiency of the allegations, Plaintiffs argue that the causes of action were well pleaded in the *Amended Complaint*. But, in the alternative, Plaintiffs seek for the Court to allow an amendment of the pleadings relying on Federal Rule of Civil Procedure 15(b)(1) arguing that,

> . . . even at trial, amendments are allowed. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice the party's action or defense on the merits.

Docket No. 138 at p. 6. Essentially, "a party's failure to plead an issue it later presented must have disadvantages its opponent in presenting its case." Cruz v. Coach Stores, 202 F.3d 560, 569 (2d Cir. 2000).

In turn, "Defendant objects to any amendment since it would clearly prejudice defendant, especially at this stage of the proceedings where discovery has been concluded and dispositive motions [have been] filed." Docket No. 146 at p. 10. In support thereof, the Defendant argues that "[t]he law is clear, any matter not properly pleaded, with the exception of the Court's lack of jurisdiction, is deemed waived if not timely and properly raised." Id.

1)  **Sufficiency of the Pleadings**

Generally, Federal Rule of Civil Procedure 8(a) requires Plaintiffs to provide "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds

of his entitlement [with] more than labels and conclusions." *See* <u>Ocasio–Hernandez v. Fortuño–</u>

<u>Burset</u>, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must

contain enough factual material 'to raise a right to relief above the speculative level on the

assumption that all the allegations in the complaint are true (even if doubtful in fact).' ") (*quoting*

<u>Twombly</u>, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to,

present allegations that "<u>nudge [his] claims across the line from conceivable to plausible</u>" in order

to comply with the requirements of Rule 8(a). <u>Id.</u> at 570; *See e.g.*, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662

(2009) (emphasis ours).

A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic

circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st

Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are

inadequate as well. <u>Penalbert–Rosa v. Fortuño–Burset</u>, 631 F.3d 592 (1st Cir.2011). "Specific

information, even if not in the form of admissible evidence, would likely be enough at this stage;

<u>pure speculation is not</u>." <u>Id.</u> at 596 (emphasis ours); *See* <u>Iqbal</u>, 556 U.S. at 681 ("To be clear, we

do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the

conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that

disentitles them to the presumption of truth."); *See* <u>Mendez Internet Mgmt. Servs. v. Banco</u>

<u>Santander de P.R.</u>, 621 F.3d 10, 14 (1st Cir.2010) (the <u>Twombly</u> and <u>Iqbal</u> standards require

District Courts to "screen[ ] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. Ocasio–Hernández, 640 F.3d at 12 (*citing* Sánchez v. Pereira–Castillo, 590 F.3d 31, 49 (1st Cir.2009)) (emphasis ours).

"Plaintiffs sustain that the allegations in their *Amended Complaint* are sufficient and cover the cause of action regarding defective design of the front-end component, crashworthiness and/or occupant survival space." Docket No. 138 at p. 7. But in case the Court finds the allegations insufficient, Plaintiffs seek permission to amend the complaint as "[Kia] will suffer no prejudice or disadvantage in presenting their case since they have extensive knowledge of Plaintiffs' defective design allegations and even hired two independent experts to contest Plaintiffs' only expert." Id. at p. 8.

Meanwhile, the Defendant contends that Plaintiffs "cannot refute the fact that they did not make any allegation regarding the vehicle's front-end components, crashworthiness, or occupant survival space in that Amended Complaint." Docket No. 146 at p. 9. Basically, "all allegations of manufacturing and/or design defects were related to the post-collision fire that occurred as a natural consequence of the severe collision against the cement pole and which resulted in the front seat passenger's death." Id. at pp. 9-10.

Upon reviewing the allegations in the *Amended Complaint*, the Court finds them insufficient to raise a claim as to the 2016 Kia Rio vehicle front-end components, crashworthiness, or occupant survival space. Here, Plaintiffs rely on bald allegations that make no reference to a defect in the structure of the vehicle and rather focus on design or manufacturing defects related to an engine malfunction that resulted in a post-collision fire. Stating otherwise would be speculative at best. Therefore, the Court finds that the pleadings are insufficient to raise a

plausible claim for relief. With this hurdle out of the way, the Court must determine whether allowing an amendment of the pleadings at this late stage of the proceedings is warranted.

### 2) Amendment of the Pleadings

In the case at bar, the Court issued a *Scheduling Order* in which deadlines were set for the proceedings. Although scheduling orders may only be amended for "good cause" pursuant to Fed. R. Civ. P. 16(b)(4), the Court recognizes that the initial scheduling order does not provide a deadline for amending the pleadings. Therefore, out of an abundance of caution, the Court will evaluate Plaintiffs' request pursuant to Fed. R. Civ. P. 15(a). *See* Febus-Cruz v. Sauri Santiago, 652 F.Supp.2d 166, 168, fn. 1 (D.P.R. 2009).

As a general rule, "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . ." Fed. R. Civ. P. 15(a)(1). However, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). Therefore, "[a] motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). Thus, "[l]eave to amend is to be 'freely given,' unless it would be futile, or reward, *inter alia*, undue or intended delay." Resol. Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)(internal citations omitted) (emphasis ours). "This liberal amendment policy, however, does not equate to automatic approval for a plaintiff's request for leave to amend in all cases." Febus-Cruz, 652 F. Supp. 2d at 167–68. The First Circuit has been very specific as to how freely should leave to amend the pleadings be given depending on the moment in which they are requested, namely,

[a]s a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments . . . Once a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed.R.Civ.P. 16(b). <u>O'Connell v. Hyatt Hotels of P.R.</u>, 357 F.3d 152, 154–155 (1st Cir.2004). <u>This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent</u>. <u>Id.</u> Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show 'substantial and convincing evidence' to justify a belated attempt to amend a complaint. <u>Gold</u>, 30 F.3d at 253.

<u>Steir</u>, 383 F.3d at 12 (emphasis ours). "[F]indings of undue delay often occur in cases where a year or longer has elapsed between the plaintiffs last filed complaint and the request for leave to amend . . ." <u>Febus-Cruz</u>, 652 F. Supp. 2d at 168. *See e.g.*, <u>Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.</u>, 156 F.3d 49, 51 (1st Cir. 1998) (fifteen months) and <u>Grant v. News Group Boston, Inc.</u>, 55 F.3d 1, 5 (1st Cir.1995)(fourteen months).

The First Circuit "review[s] the district court's denial of leave to amend the complaint 'for an abuse of discretion, and defers to the district court if any adequate reason for the denial is apparent on the record." <u>Acosta-Mestre</u>, 156 F.3d at 51 (citing <u>Grant</u>, 55 F.3d at 5). "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." <u>Steir</u>, 383 F.3d at 12. Finally, "although delay alone may not result in a denial of leave to amend, some courts have held that leave may be withheld if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for the failure to plead them at that time. 6 Charles Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.).

Here, the initial *Complaint* was filed on February 15, 2019. *See* Docket No. 1. An *Amended Complaint* was filed on May 13, 2019, as a matter of course, before the Defendant appeared. *See* Docket No. 4. As no other leave to amend was requested thereafter, the *Amended Complaint* became the operative complaint. A *Scheduling Order* was entered on January 29, 2020. *See* Docket No. 19. At the parties' request, the Court pushed back the discovery deadline until October 8, 2021, and the dispositive motions deadline until November 22, 2021. *See* Docket No. 34. Accordingly, Defendant timely moved for summary judgment on November 19, 2021. *See* Docket No. 101. After receiving several extensions of time, and almost four (4) months after the discovery deadline and three (3) months after the Defendant moved for summary judgment, Plaintiffs filed a *Response in Opposition* to motion for summary judgment wherein they requested leave to amend the complaint. *See* Docket No. 138 at pp. 5-6. Essentially, Plaintiffs were seeking to include allegations as to their new theory of design defect in the frontal structure and occupant survival space of the 2016 Kia Rio subject of this claim. Id.

Upon reviewing the record, since at least February 28, 2020, Plaintiffs had abandoned the theory that Joshua Mendez's death was a result of Kia's defective or unsafe design of the 2016 Kia Rio that caused the engine fire of the vehicle. *See* Docket No. 138 at p. 7[16]. After several undue delays, and numerous discovery controversies, discovery concluded on October 8, 2021. *See* Docket No. 34. Namely, two (2) years and nine (9) months after the filing of the operative complaint, and most critical, two (2) years after the record reflects that Plaintiffs effectively knew that the theory of their case had changed, and an amendment of the pleadings was warranted.

---

[16] According to Plaintiffs, "Defendant [Kia] is aware of Plaintiffs specific design defect allegations and the specific theory of the case since February 28, 2020, when they received a 52 pages Report prepared by Plaintiffs' expert Peter Leiss."

Plaintiffs must show 'substantial and convincing evidence' to justify a belated attempt to amend a complaint other than alleging that doing so will be of no prejudice to the Defendant.  There was no such showing.

Plaintiffs did not exercise the necessary diligence by requesting leave to amend soon after they became aware of facts sufficient to warrant an amendment to include a new theory as to a design defect related to the frontal structure and occupant survival space of the 2016 Kia Rio. Most critical and determinative, the amendments "are not minor in scope." <u>Febus-Cruz</u>, 652 F. Supp. 2d at 168. These entail a completely new theory for relief in this product liability litigation which was initially related to a defective and unsafe design of the 2016 Kia Rio vehicle engine that allegedly led to the engine fire that resulted in Joshua Mendez's death and now would entail a design defect of the frontal structure and survival space of the vehicle that led to Joshua Mendez becoming entrapped that has no relation to a defect that could cause an engine fire of the vehicle. Additionally, delving into this issue would require for Defendant to incur in additional costs as dispositive motions have already been filed, and an additional postponement of an adjudication on the merits of this case. After all, "the moving party's failure to include the proposed amendment in the original pleading may put the opposing party to the added burden of further discovery, preparation, and expense, thereby prejudicing the opponent's right to a speedy and inexpensive trial on the merits." 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.).

In determining whether to allow an amendment of the pleadings, the Court also considers the dilatory tactics and bad faith exhibited by the Plaintiffs during the instant litigation. The Court notes that this is not the first instance in which Plaintiffs failed to comply with the applicable rules and have caused undue delays in the proceedings. *See* Docket Nos. 50-51, 61, 72, 79-80. For

instance, the Court had to strike expert witness, Peter Leiss' untimely unsworn affidavits as they constitute "sham affidavits" introduced to manufacture a dispute of material fact otherwise absent from the record. *See* Docket No. 171. Some of the qualifications made in those unsworn statements were contradictory and aimed at correcting the unfavorable declarations made under oath by the expert witness during his deposition.

Likewise, the Defendant raised concerns as to the deterioration of the vehicle subject of this case, even though Plaintiffs have a duty to preserve all relevant evidence related to this litigation.[17] *See* Calderon v. Corporacion Puertorriquena de Salud, 992 F.Supp. 2d 48, 51 (D.Puerto Rico 2014)(citing Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001). *See e.g.,* Docket No. 104-3 and 104-7. A *Motion to Dismiss as Sanction for Plaintiffs' Spoliation of Evidence* (Docket No. 104) has been filed as to this issue.[18] These are all bad faith tactics that are discouraged in this district.

Finally, even if Plaintiffs were afforded the opportunity to amend the complaint, this exercise would be futile as the possibility of succeeding on the merits is an uphill battle. "[N]umerous courts have held that a proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face . . . should be denied." 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.); *see* Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962); Jackson v. Salon, 614 F.2d 15, 17 (1st Cir. 1980).

Here, Plaintiffs would have to overcome the spoliation of evidence potential hurdle. Additionally, in their *Opposition*, Plaintiffs relied solely in Leiss' unsworn expert report and

---

[17] The Court is on record as to its concern over this controversy. *See* Docket Nos. 61 and 80.
[18] As summary judgment is warranted irrespective of a determination as to this issue, this matter is now **MOOT.**

subsequent declaration that have been both stricken as "sham affidavits." As unsworn expert reports are inadmissible hearsay that cannot be considered on a summary judgment stage, Plaintiffs' claims fail as they are unsupported by record citations or evidence. *See* Redondo Const., Co. v. Izquierdo, 929 F. Supp. 2d at 19. This scenario prevents Plaintiffs from establishing with definite and competent evidence, as required by summary judgment standard, that the design defect of the frontal structure of the vehicle was the proximate cause of Joshua Mendez becoming entrapped and eventually dying calcinated instead of the natural and unfortunate consequence of Plaintiff, Nelson Ayala's crash into a stationary cement pole at approximately 34-39 mph, when he negligently fell asleep at the wheel.

In sum, the motion for leave to amend, was proffered at the eleventh hour to fend off summary judgment. Considering the aforementioned, and upon finding that Plaintiffs also unduly delayed and acted in bad faith in the instant proceedings, the request for leave to amend the complaint must be **DENIED.**

## VI.   CONCLUSION

For the reasons elucidated above, the Court hereby **GRANTS** the Defendant's *Motion for Summary Judgment due to Plaintiffs' Inability to Establish Basic Elements of Product Liability Claim with Admissible Evidence* (Docket No. 101). Accordingly, the instant complaint is hereby **DISMISSED WITH PREJUDICE.** Judgment of dismissal is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge

31